Grafton,
June 28, 1945. } No. 3543.

MAUDE S. IBEY *v.* EVERETT F. IBEY *& a.*

*Carr & Gifford (Mr. Gifford* orally), for the plaintiff.

*Robert W. Upton, John H. Sanders* and *Laurence I. Duncan (Mr. Duncan* orally), for the defendants Everett F. Ibey, Ernest F. Ibey and Francis R. Ibey.

JOHNSTON, J. The ruling that the gifts were not perfected and therefore ineffective was erroneous. The three bonds purchased and made payable on death to certain individuals were contracts with the United States for the benefit of third parties and as such entirely valid. *Harvey* v. *Rackliffe,* 141 Me. 169; *Reynolds* v. *Chase,* 87 N. H. 227, 230. The gifts were made through contracts duly executed, and there was no requirement that delivery be made to the donees personally in order to complete their rights in accordance with the terms of the contracts. Whether these bonds were acquired with funds used fraudulently and so impressed with a constructive trust is a separate question.

For many years it has been law in this jurisdiction that a husband cannot give away his personal property for the purpose or with the fraudulent intent of depriving his wife of her statutory rights in his estate at his decease. *Walker* v. *Walker,* 66 N. H. 390; *Cook* v. *Lee,* 72 N. H. 569; *Evans* v. *Evans,* 78 N. H. 352. This does not mean that he cannot give generously of his property to the natural objects of his bounty and to charity. It simply means that his donations should be made in good faith and not for the purpose of

defeating the statute concerning the widow's share in his estate. Just as future creditors are protected by statute from conveyances made with actual intent to defraud, similarly it is held by judicial reasoning that wives should be protected with respect to their distributive shares in the estates of their deceased husbands. Nor is it meant that the gifts of the husband are subject to any standard of reasonableness apart from the matter of fraudulent intent. In so far as *Evans* v. *Evans, supra,* applied such a separate test, it is overruled. There is no legal obligation on a husband to act reasonably to preserve or to build up his estate for the benefit of the expectant interest of his wife. Moreover, "fraud is never to be presumed, and must be clearly established by proof. . . . It will not be implied from doubtful circumstances which only awaken suspicion." *Jones* v. *Emery,* 40 N. H. 348, 350.

If fraud as herein defined is found, it does not follow that the bonds, valid in themselves, belong to the estate. The widow is entitled to what she has lost, but otherwise the bonds are payable in accordance with their terms. The measure of damages is what the widow would have gained if the bonds had been made payable to the decedent's estate. To this extent, the bonds or their proceeds are subject to a constructive trust in favor of the plaintiff, if fraud is found. The federal government recognizes that ownership of such bonds may be different than the wording of them indicates. "1. *Judicial proceedings.* — A savings bond will be paid to, but not reissued in the name of, the person found entitled thereto through judicial proceedings, upon presentation and surrender of the bond: *Provided however,* That no such proceedings will be recognized if they would give effect to an attempted voluntary transfer of the bond or would defeat or impair the rights of survivorship conferred by these regulations upon co-owners and beneficiaries. Such payment will be made to the extent of the interest determined, at the redemption value current 30 days after the proceedings have become final or current at the time the bond is presented for payment, whichever is earlier." Regulations Governing United States Savings Bonds. Department Circular No. 530 (2nd Rev.). Treasury Department, Office of the Secretary, December 15, 1938.

The defendants excepted to the finding that there was fraud. In view of the fact that their motion to dismiss at the close of the plaintiff's case was granted as to this issue and that accordingly they had no opportunity to introduce evidence on this matter, the exception is sustained and a new trial ordered.

The plaintiff excepted to the exclusion of evidence as hearsay that on numerous occasions between February 10 and Labor Day, 1940, James H. Ibey said in substance: "I have" or "I will fix it so that you, Maude, won't get any part of my estate." The admissibility of this evidence depends upon the words used and their meaning. The excluded statements were made at various times from a month before the purchase of the bonds to within six months after. The plaintiff's case depends upon the intention of the deceased. "Nevertheless there are many instances in which a prior or subsequent state of mind is relevant to show the state of mind at a specified time . . . ; and wherever this state of mind is an intent, prior or subsequent declarations of an existing intent would properly be admissible." 6 Wig. Ev. (3rd *ed.*), *s.* 1729. *Managle* v. *Parker*, 75 N. H. 139, 143. Statements made before the transaction of March 6, 1940 that show a present intention to deprive the wife of some of her distributive share were clearly admissible on the issue of fraud. Statements made after the purchase of the bonds are competent evidence if they show a present intention to prevent the wife from having her statutory rights and are not merely historical of the state of mind March 6, 1940. Narratives of past facts or expressions of one's understanding of what has happened do not show such intention and are incompetent hearsay. A purpose that the wife be defrauded of her marital rights within the time specified may be found to be a continuing state of mind of such character from the earlier date of the bond purchase. "Under this doctrine two things are plain, (1) that the declaration must concern the mental state of the declarant, and (2) must have reference to the time at which the declaration was made. It is in this sense that the word 'contemporary' is often used in discussing this exception to the hearsay rule. Declarations as to past mental conditions are pure hearsay and are not within the exception." *American Employers Ins. Co.* v. *Wentworth*, 90 N. H. 112, 117.

*New trial.*

MARBLE, C. J., was absent: the others concurred.