Rockingham
No. 78-064

LORETTA M. CLOONEY

v.

PATRICK T. CLOONEY & *a.*

November 15, 1978

*Bernard J. Robertson*, of Exeter, by brief, for the plaintiff.

*Patrick T. Clooney*, of Massachusetts, by brief and orally, pro se, for the defendants Patrick and Shirley Clooney.

LAMPRON, C.J. This case involves an action to impose a constructive trust on property in Derry to which the defendants Patrick and Shirley Clooney held legal title. The Superior Court (*Goode*, J.) granted plaintiff's petition, decreeing that she shall have ownership of the property free and clear of all claims of the defendants. During the trial, the defendants objected to the admission of certain evidence, and to the denial of their motion to set aside the court's order based on the insufficiency of the evidence. The evidentiary questions and the trial court's denial of the motion were reserved and transferred. We sustain the trial court's decree.

The plaintiff was the daughter-in-law of the defendants. She obtained a divorce from the defendants' son on the same day as the hearing to impose the constructive trust. The divorce decree granted her the family residence, which is the property at issue, and custody of the four children.

The plaintiff testified that the property was originally placed in the name of the defendants because neither she nor her husband could obtain a mortgage. She testified that she paid almost all of the house expenses, including the down payment of $1500, the monthly mortgage payments, the taxes, utility bills, and the maintenance costs. She stated that payments were made with the understanding that the house would belong to her family when the mortgage was paid.

The defendants denied that the title was put in their names only as a device for the plaintiff's benefit. Instead, they characterized the arrangement as one of landlord-tenant, established as a favor to the son, and the rent obligation was to consist of the tenant paying all the expenses of the house.

At the trial the plaintiff introduced, as proof of her making the mortgage payments, carbon copies of money orders made payable to the mortgagee bank. She made no showing of an attempt to obtain the originals, which were returned to the bank. On the basis of the best evidence rule, the defendants objected to the admission of these copies. Specifically, the defendants argued that originals had to be produced.

■■■ A copy is secondary evidence that is admissible only if "the absence of the original is satisfactorily accounted for." *Chagnon Lumber Co. v. Patenaude*, 103 N.H. 448, 449, 174 A.2d 415, 416 (1961). Whether the lack of the original is satisfactorily accounted for is a question for the trial court, who should decide on the admissibility of the copy in light of the facts of the case. *Id.* The plaintiff explained that the originals were in the possession of the bank. The defendant did not question the accuracy of the copies. Therefore, the trial judge did not abuse his discretion by admitting the copies. *See Wein v. Keller*, 118 N.H. 545, 391 A.2d 878 (1978).

■■ The plaintiff testified that, since neither she nor her husband could obtain credit, "[w]e decided to put [the house] in my father's-in-law and mother's-in-law name." The judge correctly overruled the objection to that testimony. Assuming the statement is hearsay, it is admissible under the state of mind exception to the hearsay rule, as a declaration of intent. This exception is well established in New Hampshire and elsewhere. *See, e.g., Ibey v. Ibey*, 93 N.H. 434, 437, 43 A.2d 157, 159 (1957); *Bennett v. Bennett*, 92 N.H. 379, 387, 31 A.2d 374, 380 (1943); Fed. R. Evid. 803 (3); 6 J. Wigmore, Evidence § 1725 (Chadbourne rev. 1976). The declaration must concern the mental state of the declarant and have reference to the time at which the declaration was made. *Ibey v. Ibey supra; Am.*

*Employer's Ins. Co. v. Wentworth*, 90 N.H. 112, 116–7, 5 A.2d 265, 268 (1939). The statement at issue met these requirements. The "we decided" refers to the intent of the plaintiff's husband, as well as herself, and shows a present intention to act.

■ In addition the trial court could have found that the testimony was a nonhearsay statement. The plaintiff must show that she was reasonable in believing that the defendants would act in her interest, in order to prove the confidential relationship necessary for a constructive trust. *Kachanian v. Kachanian*, 100 N.H. 135, 137, 121 A.2d 566, 568 (1956). The statement can be interpreted as the husband's plan of how they could arrange the financing to enable him and the plaintiff to buy the house. As such, the statement is admissible as an operative fact to show the reasonableness and good faith of her subsequent conduct. *Foster v. State*, 117 N.H. 16, 20, 370 A.2d 257, 260 (1977); *Ellsworth v. Watkins*, 101 N.H. 51, 53, 132 A.2d 136, 138 (1957); *see* D. Binder, The Hearsay Handbook § 5.3 (1975).

■ ■ Finally, the defendants argue that evidence was insufficient to support the court's order which imposed a constructive trust. There are no rigid requirements for a constructive trust. *Milne v. Burlington Homes, Inc.*, 117 N.H. 813, 816, 379 A.2d 198, 200 (1977). A court may impose a constructive trust on property to prevent the unjust enrichment of the person holding title at the expense of another. *See, e.g., id.; Cornwell v. Cornwell*, 116 N.H. 205, 209, 356 A.2d 683, 686 (1976).

■ The confidential relationship between the parties established a sufficient basis for the trial court's order imposing the constructive trust. The basic confidential relationship arises out of the family relationship, where one party is justified in believing that the other party will act in her interest. *Wheelen v. Robinson*, 117 N.H. 1032, 1036, 381 A.2d 742, 744 (1977); *Cornwell v. Cornwell*, 116 N.H. 205, 356 A.2d 683 (1976). The relationship generally is marked by a disparity in position. 4 G. Bogert, Trusts and Trustees § 482 (2d Rev. ed. 1978).

The parties showed both a close family relationship and a disparity in position. The plaintiff was the defendants' daughter-in-law. Mr. Clooney testified that he frequently visited the plaintiff to see his grandchildren. Although the plaintiff's marriage to the defendants' son was not harmonious, she relied on her in-laws' good faith and she continued to make payments on the house. The plaintiff's small

income consisted of earnings from her work as a waitress, supplemented by welfare payments. Mr. Clooney, in contrast, is an attorney and owned other property in Massachusetts and New Hampshire.

■ The plaintiff presented ample evidence of unjust enrichment. Her payment of all the expenses of the house, as the trial court observed, far exceeded the normal tenant obligation. The plaintiff's father-in-law, Mr. Clooney, testified that he spent only $450 of his own money on the property. There was also evidence that the defendants received a fire insurance settlement of nearly $7,000, minus a deduction of six mortgage payments in arrears, but none of it was used to repair the property.

The defendants assert that, because the plaintiff could not produce documentary evidence of all her payments, she failed to prove her case. This gap in her evidence is hardly the fatal flaw the defendants believe it to be. The lack of complete documentation affects only the credibility of her evidence. The trial judge may still give the evidence the weight he thinks appropriate.

■ The defendants correctly state that the evidence to support a constructive trust must be clear and convincing. *See Patey v. Peaslee*, 101 N.H. 26, 30, 131 A.2d 433, 436 (1957): G. C. and G. T. Bogert, Law of Trusts § 78 (5th ed. 1973). Based on the evidence, the trial judge could find by clear and convincing evidence that defendants' title was procured in a manner that would make it unconscionable for them to retain it. Therefore, we sustain the decree.

*Exceptions overruled.*

BROCK, J., did not sit; the others concurred.