Grafton
No. 93-810

ELAINE M. WALSH, EXECUTRIX OF THE WILL OF ANDREW YOUNG

v.

MARJORIE I. YOUNG

July 6, 1995

*McNamara, Schuster, Wheeler, Buttrey & Wing, P.A.,* of Lebanon (*Claude T. Buttrey* and *Margaret K. Wheeler* on the briefs, and *Mr. Buttrey* orally), for the plaintiff.

*Daschbach, Kelly & Cooper, P.A.,* of Lebanon (*Deborah J. Cooper* on the brief and orally), for the defendant.

BROCK, C.J. The plaintiff, Elaine M. Walsh, appeals the Superior Court (*Morrill,* J.) dismissal of her petition to impose a constructive trust over funds from certain bank accounts that were once held jointly by the defendant, Marjorie I. Young, and Andrew Young, who is deceased. We affirm.

The plaintiff is the daughter of Andrew Young and Marian Young, his first wife. The plaintiff is also the executrix of her father's estate. The defendant was the second wife, and is the widow, of Andrew Young. Prior to the defendant's marriage to Young, they executed an

antenuptial agreement. The agreement, substantially identical to the form antenuptial agreements contained in 3A C. DOUGLAS & C. DOUGLAS, NEW HAMPSHIRE PRACTICE, FAMILY LAW Appendix III, at 395–98 (2d ed. 1992) and 7 C. DEGRANDPRE, NEW HAMPSHIRE PRACTICE, WILLS, TRUSTS AND GIFTS Appendix, at 537–39 (2d ed. 1992), contains the following two provisions:

> 3. *Property of Andrew Young.* Andrew Young shall at all times have, hold, use and invest in his own name and for his sole use and benefit, all the property, real and personal, which he now has or may hereafter acquire, . . . the same to be at all times under his sole and separate control, with full right to part with the same by sale, gift, devise or in any other manner during his lifetime, and by will or by intestacy or otherwise at his death, and all such rights shall be as full and complete in all respects as though no marriage existed.

> 4. *Release of Property Rights.* A. The parties hereby release, convey and quitclaim to the other any and all interest either may acquire in and to the property now in the possession of, or that may hereafter be acquired by the other, and each hereby renounces and releases to the other forever all claims in law and equity each may have against the other, including claims for curtesy, dower, homestead, survivorship, inheritance, statutory distributive share, taking against the will, or otherwise acquired by virtue of a marriage between them.

*Cf.* 3 C. DOUGLAS, NEW HAMPSHIRE PRACTICE, FAMILY LAW Appendix III, at 553–58 (1982).

Before his death, Andrew Young transferred the balances of several bank accounts in his name alone into joint accounts with the defendant, with a right of survivorship. When he died, the defendant closed these joint accounts and transferred the funds into an *inter vivos* revocable trust naming herself as the beneficiary. The plaintiff was the primary devisee under Andrew Young's will; the only other devisee was the defendant, who received a life estate in the residence that Young and the defendant shared.

The plaintiff filed a petition for constructive trust in the superior court alleging that the defendant had wrongfully retained monies which rightfully should have passed through Andrew Young's estate. Both the plaintiff and defendant moved for summary judgment. The Superior Court (*Fauver,* J.) denied both motions, finding that a genuine issue of material fact remained; namely, whether the word "survivorship" in paragraph 4A of the agreement was intended to include the right of survivorship that arises upon the death of one owner in a joint tenancy.

After a hearing on the merits, the trial court found that the use of the word "survivorship" in the antenuptial agreement was not ambiguous, but considered extrinsic evidence to determine the parties' intent. The trial court concluded that the antenuptial agreement was not intended to disclaim or waive the defendant's statutory right of survivorship in the joint accounts, and dismissed the plaintiff's petition for imposition of a constructive trust over the proceeds. The plaintiff appeals, arguing that the contract term was not ambiguous and that the defendant had effectively disclaimed her rights of survivorship by signing the antenuptial agreement. The defendant filed a cross-appeal, asserting that the superior court erred when it denied her motion for summary judgment.

In order to support a claim for a constructive trust, the plaintiff must demonstrate by clear and convincing evidence that such action is warranted. *Clooney v. Clooney,* 118 N.H. 754, 758, 394 A.2d 313, 316 (1978). She must prove that the defendant possesses the property in question, that there was a confidential relationship between the defendant and Young, and that the defendant would be unjustly enriched were she allowed to retain the property. *See Cornwell v. Cornwell,* 116 N.H. 205, 208–09, 356 A.2d 683, 686 (1976); *Kachanian v. Kachanian,* 100 N.H. 135, 137, 121 A.2d 566, 568 (1956). Because the superior court ruled that the defendant did not waive her right of survivorship in the joint accounts by signing the antenuptial agreement, no finding of unjust enrichment was warranted. Accordingly, our analysis on appeal turns on an interpretation of the antenuptial agreement itself.

We construe antenuptial agreements in the same way that we construe other contracts, "and accordingly, the proper interpretation of an antenuptial agreement is one that speaks to the intention of the parties at the time they enter the contract." *MacFarlane v. Rich (MacFarlane),* 132 N.H. 608, 612, 567 A.2d 585, 588 (1989). We determine the intent of the parties "from the entire instrument, together with its general scope and purpose, the language used, the conditions and circumstances surrounding the parties at the time the agreement was made, . . . [and] the legal rights of the parties, as they existed before, and would have existed after the marriage." 41 AM. JUR. 2D *Husband and Wife* § 288, at 237 (1968); *see Gamble v. University of New Hampshire,* 136 N.H. 9, 13, 610 A.2d 357, 360 (1992). "[A]bsent fraud, duress, mutual mistake, or ambiguity, we must restrict our search for the parties' intent to the words of the contract." *Parkhurst v. Gibson (Parkhurst),* 133 N.H. 57, 62, 573 A.2d 454, 457 (1990). "[T]he meaning of a contract is ultimately a matter of law for this court to decide," including the determination whether a contract term is ambiguous. *Restaurant Operators, Inc. v. Jenney,* 128

N.H. 708, 710, 519 A.2d 256, 258 (1986); *see Holden Eng'g and Surveying v. Pembroke Rd. Realty Trust,* 137 N.H. 393, 395, 628 A.2d 260, 262 (1993).

Paragraph 4A of the agreement, titled "Release of Property Rights," is comprised of a single, eighty-three-word sentence. It states that each party to the agreement relinquishes all claims against each other, *"including claims for* curtesy, dower, homestead, *survivorship,* inheritance, statutory distributive share, taking against the will, *or otherwise acquired by virtue of a marriage between them."* (Emphasis added.) The plaintiff asserts that the claims listed in the subordinate clause beginning with "including claims" were not intended to constitute an exclusive list. The defendant contends that the "otherwise acquired" language at the end of the sentence serves to limit the types of claims that the parties disclaim to those that arise "by virtue of marriage."

■■ Looking to the entire document for guidance, *see Parkhurst,* 133 N.H. at 62, 573 A.2d at 458, we note that in paragraph three of the agreement, Andrew Young reserved a "full right to part" with his individual property "by sale, *gift,* devise or *in any other manner during his lifetime,* and by will or by intestacy *or otherwise at his death."* (Emphasis added.) Pursuant to this provision, Young devised a life estate in the couple's home to the defendant and transferred to her in her name alone the balance of at least one bank account without offending the antenuptial agreement. This is consistent with decisions in other jurisdictions construing similar provisions: in general, when a spouse, after signing an antenuptial agreement, executes a will or takes some other action that confers more benefits upon the other spouse than is otherwise provided for in the agreement, "the inference is great that [the spouse] intended these benefits to be above and beyond that which is given by the agreement." *In re Estate of Klein,* 239 A.2d 464, 468 (Pa. 1968).

Viewing the document as a whole, we conclude that the parties to the antenuptial agreement intended the waivers encompassed in paragraph 4A to affect only those rights that arose by virtue of the marriage between them. *Cf. Parkhurst,* 133 N.H. at 62, 573 A.2d at 458 (finding a clause in an antenuptial agreement waiving specific rights and "all other marital rights" to be not ambiguous, but a broad and general waiver of rights that arise by virtue of the marital relationship). Absent such a conclusion, their retained rights to dispose of their property "by sale, gift, devise or in any other manner during [their] lifetime[s], and by will or by intestacy or otherwise at [their] death[s]," would be severely diminished. Specific provisions in contracts "should be so interpreted as not to be in conflict with what clearly appears to be the dominant purpose of the contract." *Id.* at 63,

573 A.2d at 458 (quotations omitted). We agree with the superior court's finding that the purpose of the antenuptial agreement was "to permit either party to dispose of his or her property free of the otherwise lawful claims which the other would have *as his or her spouse.*" The retained rights to transfer property, to each other or to others, is fully consistent with this purpose.

■ Survivorship rights in a joint bank account do not arise by virtue of a relationship between the joint owners; rather, they are acquired by virtue of an agreement or contract between the owners and the banking institution. *See* RSA 384:28 (1983). When he transferred the balances of the bank accounts into joint accounts with the defendant with a right of survivorship, Young "disposed" of those balances, as he was authorized to do in the agreement, so that the balances became the defendant's if she survived him. *See id.; In re Wszolek Estate,* 112 N.H. 310, 314, 295 A.2d 444, 446 (1972) (RSA 384:28 "establishes property rights in the survivor authorizing the payment of the balance to him without a showing of a donative intent on the part of the party furnishing the funds"); DEGRANDPRE, *supra* § 33.09, at 378 (transfer into a joint account with right of survivorship "results in a valid gift to the survivor"). She did not waive her full right of ownership in the accounts when she signed the antenuptial agreement. *Cf. Boucher v. Johnson,* 117 N.H. 343, 346, 373 A.2d 349, 351 (1977).

The trial court erred in considering extrinsic evidence to reach the same result we reach today. *Parkhurst,* 133 N.H. at 62, 573 A.2d at 457. However, "[w]hen a trial court reaches the correct result, but on mistaken grounds, [we] will sustain the decision if there are valid alternative grounds to support it." *Quinlan v. City of Dover,* 136 N.H. 226, 230, 614 A.2d 1057, 1059 (1992). Because the defendant was the sole owner of the bank accounts at the time of Young's death, and because she did not waive her rights to such ownership by signing the antenuptial agreement, there is no basis for the imposition of a constructive trust. In light of this holding, we need not decide the issues raised in the defendant's cross-appeal.

*Affirmed.*

All concurred.