Rockingham County Probate Court
No. 97-059

MARY P. HOPWOOD

v.

ROBERT J. PICKETT & a.

August 23, 2000

*Chubrich & Harrigan, P.A.*, of Portsmouth (*Michael E. Chubrich* on the brief and orally), for the plaintiff.

*James E. Ritzo, P.A.*, of Portsmouth (*James E. Ritzo* on the brief and orally), for defendant Robert J. Pickett.

· *McLane, Graf, Raulerson & Middleton, P.A., Trustee*, filed no brief.

HORTON, J. The plaintiff, Mary P. Hopwood, appeals the Rockingham County Probate Court's (*O'Neill, J.*) decision denying her petition for a constructive trust. We vacate and remand.

This case concerns the distribution of the intestate estate of David Pickett, who died on February 3, 1993, from the infliction of an incision wound to his neck by one or more unknown persons. Under the intestate distribution statute, David Pickett's brother, defendant Robert J. Pickett, and his sister, the plaintiff, are heirs at law to his estate. *See* RSA 561:1, II(c) (1997) (amended 1998).

In 1994, the plaintiff filed a petition in the Rockingham County Probate Court to impose a constructive trust on Robert Pickett's inheritance. The plaintiff alleged that Robert Pickett murdered David Pickett over a property dispute, and she sought distribution of Robert Pickett's inheritance to the remaining heirs at law. The court concluded that the plaintiff failed to prove by clear and convincing evidence that Robert Pickett intentionally killed David Pickett and denied the petition for a constructive trust.

The plaintiff first argues that the probate court erred in applying the clear and convincing evidence standard of proof to her constructive trust claim. The plaintiff's argument presents a question of law, which we review *de novo. See Sullivan Cnty. Reg. Refuse Dist. v. Town of Acworth*, 141 N.H. 479, 482, 686 A.2d 755, 757 (1996).

In *Kelley v. State*, 105 N.H. 240, 242-43, 196 A.2d 68, 70 (1963), we held that a constructive trust is the appropriate remedial device to prevent a slayer from enjoying unjust enrichment by inheriting the victim's property. The slayer is unjustly enriched in the sense that he or she hastens acquisition of estate property, thereby avoiding the risk of dying first or being disinherited. 5 A. SCOTT. & W. FRATCHER, THE LAW OF TRUSTS § 492, at 436-38 (4th ed. 1989).

The general rule in this jurisdiction is that a party seeking to impose a constructive trust must prove by clear and convincing evidence that such a trust is warranted. *See, e.g., Salisbury v. Lowe*, 140 N.H. 82, 83, 663 A.2d 611, 612 (1995); *Clooney v. Clooney*, 118 N.H. 754, 758, 394 A.2d 313, 316 (1978). Imposing a constructive trust under the circumstances before us, however, is qualitatively different from doing so based upon, for example, the abuse of a confidential relationship, *see, e.g., Patey v. Peaslee*, 101 N.H. 26, 30, 131 A.2d 433, 436 (1957), or the acquisition of property through mistake, *see Lamkin v. Hill*, 120 N.H. 547, 551, 419 A.2d 1077, 1080 (1980). In such cases, parties have requested courts in equity to

contravene the express language of a writing, *see In re Estate of Cass*, 143 N.H. 57, 59, 719 A.2d 595, 597 (1998), to force a transfer of title, *see Clooney*, 118 N.H. at 755, 394 A.2d at 315, or to redirect a transfer of property, *see Salisbury*, 140 N.H at 82-83, 663 A.2d at 612, in favor of a constructive beneficiary.

Because the statute of frauds does not apply to preclude the admission of parol evidence in a constructive trust action, *Cornwell v. Cornwell*, 116 N.H. 205, 209, 356 A.2d 683, 686 (1976), "the door [is opened] to attacks on record titles and on transfers which on their faces are absolute." G. BOGERT, THE LAW OF TRUSTS AND TRUSTEES § 472, at 50 (2d ed. rev. 1978). Our general rule requiring clear and convincing evidence to impose a constructive trust, therefore, reflects a policy favoring security of title and ownership, as well as a reluctance to forge beyond the grantor's apparent intent in order to work a divestiture at equity. *Cf. Gifford v. Dennis*, 335 S.E.2d 371, 373 (Va. 1985). *See generally* BOGERT, *supra* at 44-51.

■ Clear and convincing evidence is not necessary to impose a constructive trust on a slayer's inheritance because the aggrieved party does not challenge record title, a written expression of intent, or an absolute transfer. Rather, the nature of the claim is that the slayer should be disqualified for wrongfully causing the event that accelerated the inheritance. *See* SCOTT & FRATCHER, *supra*. The policies supporting the use of the clear and convincing standard in our past constructive trust cases have no application in this context; therefore, the usual preponderance standard controls. *See Dunlop v. Daigle*, 122 N.H. 295, 298, 444 A.2d 519, 520 (1982); *cf.* SCOTT & FRATCHER, *supra* § 492.4, at 458. We accordingly vacate the court's decision denying a constructive trust and remand for a new trial under the appropriate standard of proof. *See Dunlop*, 122 N.H. at 298, 444 A.2d at 520.

The plaintiff also contends that the probate court erred in refusing to admit a sealed transcript of recorded conversations between Robert Pickett and his niece, the plaintiff's daughter, Deborah Hansen. In the interest of judicial economy, we address this argument because it is likely to arise on remand. *Petition of Smith*, 139 N.H. 299, 305, 652 A.2d 154, 158 (1994). "The trial court has broad discretion in . . . the admissibility of evidence. We will not reverse the trial court's ruling unless there is a clear abuse of that discretion." *Bronson v. The Hitchcock Clinic*, 140 N.H. 798, 809, 677 A.2d 665, 672 (1996) (citation omitted).

A significant issue at trial was whether or not Robert Pickett mailed an envelope addressed to "The Estate of David Pickett"

prior to being notified of his death. Hansen testified that Robert Pickett admitted mailing the envelope at the Rye Post Office on the morning of February 4, 1993, before police officers informed him of David Pickett's death. Robert Pickett testified that he mailed the envelope on the afternoon of February 4, 1993, from Portsmouth, after learning that his brother had been killed and denied telling Hansen otherwise. During several of her conversations with Robert Pickett, Hansen wore a "wire" so that investigators could record his statements.

Prior to trial, the plaintiff moved for limited discovery from the New Hampshire State Police investigative file regarding the homicide investigation of David Pickett's death. Robert Pickett moved for disclosure of the entire file. The State objected under *Lodge v. Knowlton*, 118 N.H. 574, 576-77, 391 A.2d 893, 895 (1978) (setting forth test to exempt police investigatory records from public disclosure). The court denied the parties' motions after an *in camera* review of the file. The court, applying *Lodge*, reasoned that disclosure of the investigative file would "(1) interfere with enforcement proceedings; (2) deprive a person of a right to a fair trial or an impartial adjudication[;] and (3) disclose investigative techniques and procedures." *See id.* at 576-77, 391 A.2d at 895.

The plaintiff subsequently sought the court's permission to introduce, *in camera*, a transcript of the recorded conversations between Hansen and Robert Pickett as a sealed exhibit to rebut Robert Pickett's expected testimony concerning those discussions. The court denied the plaintiff's motion "based upon previous rulings . . . concerning this exhibit," that is, based on *Lodge*.

■ The court's initial ruling was rendered in response to an objection from the State. The plaintiff's revised request to have the court admit the transcript as a sealed exhibit was not objected to by the State. "If the requested material is an 'investigatory record compiled for law enforcement purposes,' it may be withheld if the government can prove one of the six statutory adverse results." *Id.* at 576, 391 A.2d at 895. Because the State did not object to the introduction of the transcript as a sealed exhibit, the court's reliance on *Lodge* in refusing to admit the transcript into evidence for *in camera* consideration was an abuse of discretion.

We do not reach the plaintiff's remaining arguments because they are either meritless, *Vogel v. Vogel*, 137 N.H. 321, 322, 627 A.2d 595,

596 (1993), or raise issues that are unlikely to arise again on remand, *Laflamme v. Lewis*, 89 N.H. 69, 79, 192 A. 851, 858 (1937).

*Vacated and remanded.*

BROCK, C.J., sat for oral argument but removed himself thereafter and from that point did not participate in this decision; JOHNSON, J., sat for oral argument but retired thereafter and from that point did not participate in this decision; THAYER, J., sat for oral argument but resigned thereafter and from that point did not participate in this decision; HORTON and BRODERICK, JJ., sat for oral argument and participated in this decision; NADEAU and DALIANIS, JJ., did not sit for oral argument but participated in this decision by consent of the parties; all who participated in this decision concurred.