Hillsborough-southern judicial district
No. 93-128

### BROOKLINE SCHOOL DISTRICT

v.

### BIRD, INC.

October 29, 1997

*Kidder & Upton*, of Laconia (*Matthew H. Upton* on the brief and orally), for the plaintiff.

*Gormley, Mayer & Gormley, P.C.*, of Nashua (*Arthur O. Gormley, III* on the brief and orally), for the defendant.

HORTON, J. Following a bench trial, the Superior Court (*Dalianis*, J.) found the defendant, Bird, Inc., liable for damages to the plaintiff, Brookline School District. The defendant appeals, arguing that the superior court erred in finding: (1) the defendant failed to provide adequate warnings and instructions concerning the installation and use of its roofing shingles; and (2) the defendant's failure to warn proximately caused the damage to the plaintiff's roof. We reverse.

In 1987, the plaintiff contracted with a construction company for the roofing work on an addition to one of its schools. The construction company, in conjunction with an architect, selected shingles for the roof manufactured by the defendant. The construction company subsequently awarded a subcontract for the installation of the shingles to an installer "certified" by the defendant.

Prior to selecting the defendant's shingles, the architect sought to ensure that the shingles would be compatible with the roof's substrate, Thermasote nail base insulation manufactured by Homasote. In response to the architect's request for such assurances, Homasote informed the architect that the combination was appropriate, and provided the architect with a letter from the defendant to Homasote in which the defendant approved the use of its shingles over the insulation. The letter, dated June 4, 1982 (the 1982 letter), contained an attachment that stated in relevant part:

> Bird asphalt shingles may be applied over Homasote Easyply Roof Decking with or without Thermasote$^R$ nail base roof insulation. Shingles may also be applied on Thermasote$^R$ which has been applied over wood decking or plywood sheathing. Manufacturer's specifications must be followed.

The roof was constructed in 1987 with a metal deck upon which Thermasote insulation was placed; the defendant's shingles were then applied directly to the insulation. The shingles had arrived at the construction site in wrappers that contained the following instructions and warnings:

**2. Decks**
Apply only over dry, well seasoned wood sheathing boards not over 6" in width or exterior grade plywood. (½" min.)
**Non-Approved Roof Decks:** Bird Incorporated specifically recommends against and will not warrant its roofing shingles applied directly to any type of roof insulation . . . .

The roof failed in March 1988 and required replacement. In 1990, the plaintiff commenced this action against the construction company, the architect, the installer of the shingles, and the defendant. After the construction company and the installer defaulted and the architect settled the lawsuit, the plaintiff's claims against the defendant proceeded to trial.

The trial court granted the defendant's requested finding of fact that the "metal deck, Homasote Thermasote insulation and direct application of the shingles to the insulation with minimal ventilation caused a condition whereby heat would build up under the shingles causing the shingles to crack." The court further ruled that the defendant, through the 1982 letter, had "expressly approved" the use of its shingles over Thermasote insulation. The court found that the plaintiff, through its architect and general contractor, relied upon the 1982 letter in selecting the shingle manufactured by the defendant. The court therefore concluded that the defendant

> had a duty to warn those who had received this express approval that it had been rescinded. It was clearly foreseeable that someone relying upon this approval would experience problems with Bird's shingles, as in this case the plaintiff did. Bird was negligent in failing to warn that its approval was rescinded and, accordingly, is liable to the plaintiff for its damage.

This appeal followed.

"Findings of fact by a trial court are binding on us unless they are not supported by the evidence or are erroneous as a matter of law." *M.A. Crowley Trucking v. Moyers*, 140 N.H. 190, 193, 665 A.2d 1077, 1079 (1995) (quotation and brackets omitted). "Our function is to determine whether a reasonable person could have reached the same decision as the trial judge on the basis of the evidence." *Id.*

The defendant challenges the trial court's finding that it failed to discharge its duty to provide adequate warnings. We need not decide this issue because, even assuming that the defendant failed to discharge its duty to warn, we hold that the trial court erroneously found that the defendant's failure to warn proximately caused the damage to the plaintiff's roof.

An actor's negligent conduct is a proximate cause if it is "a substantial factor in bringing about the harm," *Maxfield v. Maxfield*, 102 N.H. 101, 105, 151 A.2d 226, 230 (1959) (quotation omitted), and if the harm would not have occurred without that conduct, *see Bronson v. The Hitchcock Clinic*, 140 N.H. 798, 801, 677 A.2d 665,

668 (1996). *See generally North Bay Council, Inc. v. Bruckner*, 131 N.H. 538, 548, 563 A.2d 428, 434 (1989). The inquiry focuses on whether the defendant's negligence "caused or contributed to cause the accident," *Murray v. Boston & Maine R.R.*, 107 N.H. 367, 374, 224 A.2d 66, 72 (1966), not on whether the defendant's negligence was the sole cause or *the* proximate cause, *see Peterson v. Gray*, 137 N.H. 374, 378, 628 A.2d 244, 246 (1993). The question of proximate cause is generally for the trier of fact. *See Pillsbury-Flood v. Portsmouth Hosp.*, 128 N.H. 299, 304, 512 A.2d 1126, 1129 (1986).

According to the defendant, the 1982 letter that formed the basis for the court's liability determination permitted application of the shingles to Thermasote insulation *only* over Homasote Easy-ply Roof Decking, wood decking, or plywood sheathing, and *not* over metal. It is undisputed that the plaintiff's roof was assembled with the shingles applied to Thermasote insulation over a *metal* deck. The trial court found that the only viable claim of the parties was whether the defendant had a duty to warn the plaintiff that a "certain *approved roof assembly procedure* was no longer approved or warranteed" by the time the roof was installed. (Emphasis added.) In answering in the affirmative, the trial court correctly determined that the 1982 letter from the defendant "expressly approv[ed] the use of Bird shingles over Homasote [Thermasote] insulation in the northeast part of the United States." The defendant argues, however, that the actual method of installation was not in compliance with the 1982 letter and contends that its "failure to warn that the 1982 method was no longer in effect was not only not a substantial factor in bringing about the cracking of the shingles, it was not even a factor in bringing about the harm."

We agree with the defendant that the actual method of installation was not in compliance with the 1982 letter. The trial court, in treating the specified design of the plaintiff's roof as a method of installation approved in the 1982 letter, failed to recognize the restrictions contained in the letter. Specifically, the court failed to take into account that the 1982 letter authorized application of the shingles to Thermasote insulation over only: (1) Homasote Easy-ply Roof Decking; (2) wood decking; or (3) plywood sheathing. In this case, the shingles were applied to Thermasote insulation over a metal deck, a method of installation not permitted by the 1982 letter.

In contrast to the trial court's findings, the record establishes that the actual method of installation of the shingles conflicted with the method of installation set forth in the 1982 letter. The defendant's failure to warn that the 1982 letter had been

rescinded could not have been a substantial factor in causing the plaintiff's damages because the plaintiff did not utilize the method of installation contained in the letter. "Findings of fact by a trial court are binding on us unless they are not supported by the evidence or are erroneous as a matter of law." *Salisbury v. Lowe*, 140 N.H. 82, 83, 663 A.2d 611, 612 (1995) (quotation omitted). Since the trial court's findings of fact are not supported by the evidence, we accept the defendant's contention that the use of a metal deck precluded a finding that the defendant's conduct was a proximate cause of the roof's failure.

Based upon a careful review of the trial court's findings and rulings, we find that the court's causation conclusion was dependent upon its erroneous view of the extent of the defendant's approval in the 1982 letter. It is a "fundamental tenet of tort law that the plaintiff retains the ultimate burden of persuasion in negligence actions." *Pillsbury-Flood*, 128 N.H. at 304, 512 A.2d at 1129. In order to recover, the plaintiff has the burden of proving that the defendant's negligent act or negligent failure to act caused or contributed to cause the plaintiff's damages. *Simpson v. Calivas*, 139 N.H. 1, 4, 650 A.2d 318, 321 (1994).

The plaintiff failed to produce sufficient evidence for a reasonable person to conclude that the defendant's failure to warn proximately caused the plaintiff's damage. The fact that the defendant did not specifically revoke its approval of the 1982 method of installation is immaterial to the outcome of this case. Accordingly, the court improperly found that the defendant's omission was a proximate cause of the roof's failure, and judgment should have been entered for the defendant.

Because we determine that there is insufficient evidence to conclude that the defendant's failure to warn caused the damage to the plaintiff's roof, we do not reach the defendant's final argument that the alleged negligence of the architect, the construction company, and the installer constituted superseding causes as a matter of law.

*Reversed.*

BRODERICK, J., did not sit; the others concurred.