QST v. OHM                                    CV-98-572-M   09/27/00
                    UNITED STATES DISTRICT COURT

                       DISTRICT OF NEW HAMPSHIRE


QST Environmental, Inc., f/k/a
Environmental Science & Engineering, Inc.,
     Plaintiff

     v.                                     Civil No. 98-572-M
                                            Opinion No. 2000 DNH 202
OHM Remediation Services Corp.;
National Union Fire Insurance Company
     of Pittsburgh, PA; and
United National Insurance Company,
     Defendants


                          **O R D E R**


     Defendant National Union Fire Insurance Company ("National

Union") moves to disqualify James C. Wheat, Esq., from serving as

plaintiff's ("ESE's") counsel in this case.  It advances two

grounds for the motion, but provides little support for either.

First, National Union says Wheat previously represented it in

connection with an underlying personal injury suit, so cannot now

represent ESE with regard to this claim against National Union, a

claim that arises from National Union's handling of the

underlying suit in which Wheat supposedly represented it.

Second, National Union says Wheat will be a necessary fact

witness in the case and so cannot continue to represent ESE consistently with the applicable Code of Professional Responsibility.  ESE and Wheat object, pointing out that he never had an attorney-client relationship with National Union in the underlying litigation, and is not a necessary fact witness.

The burden of persuasion is on National Union, and it has not met that burden.  A cursory reading of the pleadings might suggest the existence of material factual disputes, but a more studied reading of National Union's motion and memoranda suggests that no relevant facts are actually in dispute, and little basis exists for its suggestion that Wheat served as National Union's attorney.

National Union never says outright that it entered into an attorney-client relationship with Wheat; never says it retained Wheat to represent its interests; does not say it sought out Wheat's advice with respect to its involvement in the underlying Shoemaker litigation; does not claim it ever met with Wheat; does not claim it relied on advice given it by Wheat, or even that Wheat ever provided legal advice to it regarding any matter. What it does say is undoubtedly intended to give the impression

2

that an attorney-client relationship existed.  But that amorphous impression is not good enough, particularly since courts are aware that "disqualification motions can be tactical in nature, designed to harass opposing counsel, and have, therefore, kept in mind that 'the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons.'"  Kevlik v. Goldstein, 724 F.2d 844, 848 (1st Cir. 1984) (citation omitted).  Accordingly, healthy skepticism is appropriate and a clear statement of the bases for such motions is required.

The standards applicable to disqualifying counsel based upon conflicts of interest arising from subsequent representation are reasonably clear.  See Sullivan County Regional Refuse Disposal District v. Town of Acworth, 141 N.H. 479 (1996); Pearson v. First NH Mortgage Corporation, 200 F.3d 30 (1st Cir. 1999). "First, there must have been a valid attorney-client relationship between the attorney and the former client."  Sullivan County, 141 N.H. at 481 (citing Cole v. Ruidoso Mun. Schools, 434 F.3d 1373, 1384 (10th Cir. 1994)).  Here, National Union says little more on that point than that Wheat represented ESE in the underlying litigation; that ESE's insurer, Illinois National

3

Insurance Company, provided coverage to ESE; that National Union shares a parent company with Illinois National (the relationship is described as a "family," with American International Group ("AIG") apparently providing the familial umbrella under which Illinois National and National Union are situate as "members"[1]); that National Union "approved" Wheat's continuing representation of ESE, and contributed money to Illinois National to help ESE cover Wheat's fees, because National Union was contractually obligated to "provide a defense" and extend coverage to ESE under an indemnity agreement entered into by its own insured, OHMRS; that Wheat made periodic reports to ESE's own insurance carrier, Illinois National, which in turn "conferred with National Union regarding the Shoemaker case" (the implication is that ESE's insurer may have shared ESE's client confidences with National Union and somehow that potential impropriety converted ESE's legal counsel into legal counsel for National Union as well); and, that an employee of another company in the "AIG family,"

---

[1]One cannot help wondering whether the familial relationship would be described as cozily if the issue were whether the subsidiaries' corporate veils ought to be pierced and the entire family held legally responsible for each member's discrete liabilities.

4

Timothy Kelly, was of the opinion that Wheat had "an ethical responsibility to protect the interests of both AIG companies, National Union and Illinois National, as well as ESE in the Shoemaker litigation."

None of those facts, alone or taken together, supports the notion that Attorney Wheat represented National Union, or that National Union ever reasonably thought Attorney Wheat was acting as its counsel, or even ever thought that it had retained Attorney Wheat to represent ESE (the time line would suggest otherwise).

Moreover, it is not even clear from National Union's pleadings what, precisely, it is claiming. Does it mean to suggest that it is not an independent corporation? That there is an identity of interest and control between Illinois National and National Union sufficient to render them one entity? That the "AIG family of companies" comprises one business identity such that representation of Illinois National is tantamount to representation of every "member" of the "family?" That Wheat actually met with National Union, obtained information relevant to the underlying litigation, provided advice and counsel to

5

National Union, and National Union reasonably believed that Wheat was acting as its legal counsel in connection with the Shoemaker litigation?  That by performing its contractual obligation to provide ESE with a defense and coverage pursuant to OHMRS' indemnity obligation, and by placing its imprimatur on Wheat's continued representation of ESE for purposes of indemnification of counsel fees, National Union somehow became Wheat's client, or somehow acted to disqualify Wheat from fully representing ESE's interests in the underlying litigation and in this litigation (which follows directly from the underlying litigation)?  If so, the pleadings do not do the job.

The other three Acworth tests do not require discussion at this point, since the motion and supporting papers do not adequately address the first test:  Was there an attorney-client relationship between Attorney Wheat and National Union in connection with the underlying Shoemaker litigation? Perhaps National Union seriously claims there was (though it did not challenge Wheat's affidavit in opposition to the motion in its reply memorandum).

As to the second ground, that Wheat is likely to be a necessary fact witness in the case, National Union has also failed to meet its burden of persuasion. Vague allusions to Wheat's possible value as a witness are inadequate. If the motion is refiled, National Union shall state with some reasonable degree of precision: 1) What substantive testimony Wheat is expected to give; 2) How that testimony is relevant to a material factual issue in dispute; 3) Why that evidence cannot be obtained as effectively from some other source besides Wheat; and 4) What legal theory of defense the anticipated testimony will tend to support.

## CONCLUSION

Facts relevant to National Union's motion have not been adequately disclosed and the court cannot guess at what the facts are, or for that matter what the precise claim is. Accordingly, the motion to disqualify Attorney Wheat is denied at this juncture, without prejudice to refiling an adequately supported motion that addresses the issues raised in this order, particularly detailing the facts supporting the apparent claim

7

that Wheat entered into an attorney-client relationship with National Union, including those facts tending to establish that National Union reasonably believed such a relationship existed, as well as pertinent facts relevant to the claim that Attorney Wheat will be a necessary fact witness.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

September 27, 2000

cc:   James C. Wheat, Esq.
      Gordon A. Rehnborg, Jr., Esq.
      Margaret H. Nelson, Esq.